CLEAR FORM

## UNITED STATES DISTRICT AND BANKRUPTCY COURTS
## FOR THE DISTRICT OF COLUMBIA

Darrel Shipman
PLAINTIFF

402 O st NW Apt. 303
Address (No Post Office Boxes)

Washington    DC    20001
City          State  Zip Code

Case: 1:23-cv-00034 JURY DEMAND
Assigned To : Unassigned
Assign. Date : 1/5/2023
Description: Employ. Discrim. (H-DECK)

VS.

KR Contracting
DEFENDANT

223 N Prospect St #105
Address (No Post Office Boxes)

Hagerstown    MD    21740
City          State  Zip Code

CIVIL ACTION NO. _____

Jury Trial: ✓ Yes  ☐ No

### COMPLAINT

This complaint is base on discrimination, base on race, sex, Age and disability. I have worked at 800 North Capital since December of 2009 August 1, 2019 KR Contracting took over keeping all of the old employees. In March of 2021 Protective Security officer Noriega stated work at the building who is caucasian, young female. Beside the project manger hand making her a schedule. I have complained about my back from the standing nothing was done she didn't want to stop she was accommodated. One of my doctor's give me a note to be off until my last day of work was April 30, 2021 first day of missing work was May 3, 2021 and was terminated on August 16, 2021. PSO Noriega took off for months with no leave to have cosmetic surgery in the country of Columbia and allowed to come back to her regular schedule.

Original Signature (in pen)

RECEIVED
JAN - 5 2023
Clerk, U.S District & Bankruptcy
Courts for the District of Columbia

Name (if applicable, Prisoner ID No.)
402 O st NW Apt 303
Address or Facility Address
Washington    DC    20001
City          State  Zip Code

New: 06/21/2022

Reference:   EEOC No. 570-2022-00834

In mid-to late March of 2020, I was involved in a car accident. Resulting injuries caused me to miss time off from work. At the time Rhonda Jeffers was the head of HR for KR contracting and she called as well as emailed to check my progress and as well as management at that time. They made getting back to work seamless in effort to see me as an employee to return safely back to work. In reading KR Contracting statement especially that of Amelia Minto, the statement is laced with opinion and devoid of the actual facts. There is no mention of the facts that could and would be documented by means of schedules, pay records, Post assignment, and FPS Form 139 where time is recorded.

The fact are as follows. PSO Noriega started working at 800 North Capital around early March 2021. PSO Noriega was still in probationary period with no leave, tenure, or seniority eligibility. PSO Noriega was allowed to take leave in May of 2021 for a period of almost three (3) months for elective cosmetic surgery. PSO Noriega was allowed to return to duty with a preferential schedule created by Major Hoover of Monday, Wednesday, and Friday from 0600-1800 hours. Usurping the fact of a unionize site and that PSO Noriega had no seniority, Major Hoover created this schedule as an act of nepotism. Schedules were to be posted for members to bid on based on seniority which PSO Noriega failed to have. All of these actions could documented   by the above referenced means. In no way was this mentioned in Ms. Minto's statement. Did Ms. Minto look up PSO Noriega employment record and confirm that she was just starting and was not eligible for such leave? Based on time of service, PSO Noriega was to be treated as a new employee yet continued to receive preferential treatment.

As Ms. Minto stated, due to contract requirements they are required to act on any employee who does not hold a post for thirty (30) days. PSO Noriega told everyone who would listen that she was going to get cosmetic surgery. In an act of nepotism, Major Hoover granted the request above the concerns of the onsite Captain that an officer usurp the chain of command due to their relationship with the Major. Upon PSO Noriega's return to duty, the preferential treatment continued. As PSO's, we are all required to meet certain physical standards and maintain required certifications regardless to gender. Major Hoover changed other officer's schedules to accommodate PSO Noriega. For example, on Posts where PSO Noriega was required to stand 6 hours of a 12 hours shift, she complained directly to Major Hoover thus usurping to the chain of command and Major Hoover put PSO Noriega on a post where she sits most of her

1

shift.

With full knowledge of my accident, I complained to both Captain Sook and Major Hoover about my back pain on a daily basis yet nothing was ever done to accommodate me. Post 6 assignment requires a lot of standing especially so when I'm held over for an additional 4 hours, I'm on that post with a rotation between Post 1 where you are required to stand during the morning rush which ends at 1000 hours. This is the same post PSO Noriega complained to Major Hoover about and was accommodated to a sit-down post which was on the loading dock (Post 7). My shift hours were 0001 to 0800 hours Monday thru Friday and when I'm held over it then become 0001 to 1200 hours. I had a documented valid injury yet there was never actions to accommodate me.

I was the President of Local 337. During my time as Vice President and eventually President, I wrote a high volume of grievances. I wrote so many grievances that former Project Manager Major Smith stated to me that Tobias Braun of management told her if they had put me on FMLA when I initially got in the car accident, they could have gotten rid of him (me). This way they would not have to put up with me writing grievances. Major Smith also told me that they were looking for a way to get rid of me so be careful. Whenever officers had an issue with anything that they disagreed with, they would come to me to address management.

Ms. Minto stated that I was became belligerent with Human Resources as well as I returned to work with a "leave slip" asserting that I would be out due to surgery the following day. Nothing can be further from the truth. I never mentioned anything about surgery! I went out due to severe back pain as result of the car accident. As far as Human Resources, they were making demands that I return specific medical documents with deadlines. I continued to state to HR that the medical verification document was provided to the physician's office. Due to the Covid pandemic, office visits as well as appointments were suspended with no walk-in visits. I continued to receive the response that the doctor will fill out the medical verification document as soon as they can get to it. Working remotely and by Telemedicine, the medical staff was adjusting therefore there were delays. Even though I relayed this information to HR, they continued to act as though I could perform magic and force the doctor's office to immediately respond. This prompted me to state that they are harassing me about the document even though the request was submitted and I continued to reach out to the doctor's office and made HR aware of the situation.

The facts is my last full day of work was Friday April 30, 2021. The first day of work missed was Monday May 3, 2021. Ms. Minto claims that I did not respond to HR calls. I explained to HR that I never received any calls nor were there voice messages left on my answering service. When I asked for clarity as to the dates, time, and number they

2

called and the number HR called from, they stated that I was being disrespectful to the HR staff. Ms. Minto states this only after and because I asked for verification in which I was ignored and never received a reply for my request.

To sum it up, there were never any calls or voicemail as they state HR made to reach out to me. I reached out to Verizon for my call logs from May of 2021 till August 2021 as proof and verification of this fact. Again, I say facts and not opinion. As far as Ms. Minto's assertion that the Labor Union did not find fault is inaccurate. The fact is there are time limits as to when grievances could be filed. My complaint was out of the scope for filing the grievance. The whole leave process became so convoluted for me while PSO Noriega was provided the clearance and blueprint of taking leave for an elected medical surgery and how to return with minimum effort.

Respectfully submitted;

Darrell V. Shipman